

ENTERED
04/04/2008

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) ) ) | |
| STARMARK CLINICS, LP, | ) ) | CASE NO. 08-31229-H3-11 |
| Debtor, | ) ) | |

MEMORANDUM OPINION

On April 1, 2008, the court held a hearing on its Order to Show Cause (docket No. 7) why a patient care ombudsman should not be appointed in the instant case. Following that hearing, the court entered a second Order to Show Cause (Docket No. 32) why the instant case should not be dismissed, in light of the appearance that Debtor's President may have filed the instant case in order to gain unfair advantage in a two-party dispute. The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered dismissing the above captioned case. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Starmark Clinics, LP ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 29, 2008.  The petition was signed by Marc Starko, who identified himself in the petition as President of MJS Medical Management, LLC,[1] and by Debtor's attorney, Thomas F. Jones III.

The petition in the instant case identified the instant case as a small business case, within the meaning of 11 U.S.C. § 101(51C).  The petition did not identify Debtor as a health care business, within the meaning of 11 U.S.C. § 101(27A).

The court entered its first Order to Show Cause (Docket No. 7) on March 5, 2008, directing Debtor's counsel and Debtor's representative to appear and show cause why a patient care ombudsman should not be appointed in the instant case.  The order scheduled a hearing on March 26, 2008.

At the hearing on March 26, 2008, Jones, counsel for Debtor, appeared.  Starko did not appear.  As a courtesy, the court rescheduled the hearing on the first Order to Show Cause to April 1, 2008.

On the date of the hearing, April 1, 2008, Debtor filed schedules (Docket No. 29) and a statement of financial affairs

---

[1] Subsequently, Debtor has filed copies of resolutions executed by Starko, on behalf of himself as the "manager" of MJS Medical Management, LLC, and on behalf of MJS Medical Management, LLC, as the general partner of Debtor, authorizing the filing of the instant case.  (Docket No. 22).

2

(Docket No. 30).

In the schedules, Debtor lists as assets three pieces of equipment used in Debtor's business: two lasers and a "microderm." Debtor values the equipment in the schedules at $90,000, and lists it in Schedule D as encumbered by a lien in favor of Trustmark Bank. Debtor also lists as assets general office furnishings and equipment, listed with a value of $10,000, and medical supplies, listed with a value of $1,000. (Docket No. 29).

Debtor also lists as assets three claims, against Mark D. Gilliland, Gilliland's purported attorney-in-fact, Harry Urech, and Gilliland's legal counsel, Anne Kennedy, pending in the 190th Judicial District Court of Harris County, Texas. Debtor lists a value of $3 million for each of these claims. (Docket No. 29).

Debtor's schedules D and F list as debts a $175,000 debt owed to Trustmark Bank, secured by Debtor's equipment, and three unsecured creditors: Trustmark Bank, Bioform, and Allergan. Debtor also lists a claim on behalf of Urech, in an unknown amount. (Docket No. 29).

In the statement of financial affairs, Debtor indicates that it received gross income of $105,000 in 2007, and $34,369 in 2008 prior to the February 29, 2008 petition date in the instant case.

At the April 1, 2008 hearing on the first Order to Show Cause, the matter was initially set for 2:15 p.m. The matter was called at 2:28 p.m., at which time neither Starko nor Jones was present. The court heard argument from Kennedy, on behalf of Gilliland, and from counsel for the United States Trustee. After the court had adjourned, Starko and Jones entered the courtroom, and requested that the matter be recalled. The court reopened the hearing at 2:55 p.m.

At the reconvened hearing, Starko testified that Debtor provides outpatient services that Starko described as "cosmetic." He testified that these services include acne removal, laser treatment, and injections. He testified that the acne removal treatments are done by cosmeticians, the laser treatment by technicians, and injections of "fillers" and "botox" by registered nurses. He testified that he performs some of the services himself. He testified that Debtor maintains "medical records" for its patients.

Starko testified that Debtor has cosmeticians, technicians, and registered nurses on staff, and has two medical doctors available "on call" for any matters deemed necessary to be referred to a doctor. On cross-examination, Starko admitted that one of the two doctors is present at the clinic for part of three days per week, and that the other doctor purportedly "on call" is his neighbor.

Starko testified that Debtor's business is regulated, and requires that Debtor maintain licenses.  However, on cross-examination, he testified that no one inspects the facility.  He testified that state regulations and licensing schemes have "not caught up" with practices in the industry.

On cross-examination by Kennedy, Starko became extremely argumentative.  Starko gave extensive testimony which was not responsive to the questions posed, regarding the merits of the suit pending in state court, and repeatedly failed to answer the questions posed to him by Kennedy.  His testimony was not credible.

In the suit pending in state court, Urech, purportedly as attorney-in-fact for Gilliland, asserts, inter _alia_, that Starko was previously Gilliland's attorney-in-fact, pursuant to a power of attorney dated March 28, 2006, fraudulently misappropriated $400,000 from Gilliland in order to form the entity that is now the Debtor in the instant case, and misrepresented that the entity to be formed would be a general partnership.

In light of the amount in controversy in the state court, compared to the size of the bankruptcy estate as described in the schedules in the instant case, as well as the apparent dispute over ownership of Debtor, the court issued the second Order to Show Cause (Docket No. 32) on April 1, 2008, immediately

5

following the conclusion of the hearing on the first Order to Show Cause.  The second Order to Show Cause directed Jones and Starko to appear on April 3, 2008, and show cause why the above captioned case should not be dismissed, in light of the appearance that the Debtor was attempting to gain unfair advantage in a two-party dispute.

At the hearing on the second Order to Show Cause, on two days' notice to Debtor, Debtor appeared through counsel Jones.  Starko failed to appear at the April 3, 2008 hearing.  Debtor presented no testimony at the April 3, 2008.  Debtor presented documentary evidence, consisting of a financing statement regarding the secured debt owed to Trustmark Bank, and copies of Debtor's schedules and statement of financial affairs.

At the hearing on the first Order to Show Cause, Kennedy informed the court that she has filed on behalf of Gilliland a motion to appoint a Chapter 11 trustee.  At the hearing on the second Order to Show Cause, Kennedy urged that the court address the motion to appoint a trustee prior to dismissal of the case.

## Conclusions of Law

Section 101(27A) of the Bankruptcy Code provides:

(27A) The term "health care business"--

> (A) means any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for--

6

>     (i) the diagnosis or treatment of injury,
>     deformity, or disease; and
>     (ii) surgical, drug treatment, psychiatric, or
>     obstetric care; and
>
>   (B) includes--
>
>     (i) any--
>
>       (I) general or specialized hospital;
>
>       (II) ancillary ambulatory, emergency, or
>       surgical treatment facility;
>       (III) hospice;
>       (IV) home health agency; and
>       (V) other health care institution that is
>       similar to an entity referred to in subclause
>       (I), (II), (III), or (IV); and
>
>     (ii) any long-term care facility, including any--
>
>       (I) skilled nursing facility;
>       (II) intermediate care facility;
>       (III) assisted living facility;
>       (IV) home for the aged;
>       (V) domiciliary care facility; and
>       (VI) health care institution that is related
>       to a facility referred to in subclause (I),
>       (II), (III), (IV), or (V), if that
>       institution is primarily engaged in offering
>       room, board, laundry, or personal assistance
>       with activities of daily living and
>       incidentals to activities of daily living.

11 U.S.C. § 101(27A).

Section 333(a)(1) of the Bankruptcy Code provides:

> If the debtor in a case under chapter 7, 9, or 11 is a
> health care business, the court shall order, not later
> than 30 days after the commencement of the case, the
> appointment of an ombudsman to monitor the quality of
> patient care and to represent the interests of the
> patients of the health care business unless the court
> finds that the appointment of such ombudsman is not
> necessary for the protection of patients under the
> specific facts of the case.

11 U.S.C. § 333(a)(1).

With respect to the instant case, Debtor is a private entity which offers to the general public facilities and services for the diagnosis and treatment of physical injury, deformity, or disease, by, <u>inter alia</u>, the injection of foreign substances into the body.  The court concludes that Debtor is a health care business within the meaning of 11 U.S.C. § 101(27A).

The text of Section 333(a)(1) of the Bankruptcy Code makes clear that the burden of demonstrating that appointment of an ombudsman is not necessary for the protection of patients is on any party opposing the appointment of an ombudsman.

Courts determining whether to appoint a patient care ombudsman have considered the following nonexclusive factors: the cause of the bankruptcy; the presence and role of licensing or supervising entities; Debtor's past history of patient care; the ability of the patients to protect their rights; the level of dependency of the patients on the facility; the likelihood of tension between the interests of the patients and the debtor; The potential injury to the patients if the debtor drastically reduced its level of patient care; the presence and sufficiency of internal safeguards to ensure appropriate level of care; the impact of the cost of an ombudsman on the likelihood of a successful reorganization.  <u>See</u> <u>In re Valley Health System</u>, 381 B.R. 756 (Bankr. C.D. Cal. 2008); <u>In re Alternate Family Care</u>,

377 B.R. 754 (Bankr. S.D. Fla. 2007).

In the instant case, Debtor has not articulated a reason that the instant case was filed.  Review of Debtor's schedules does not make clear the need for a financial reorganization.  Starko's testimony indicates that the licensing and regulation of the business in which Debtor is engaged have not caught up to the services provided.  There is no evidence as to Debtor's past history (other than Starko's testimony that the Debtor has been in business approximately one year), the ability of Debtor's patients to protect their rights, or the likelihood if tension between the interests of patients and the debtor.  It appears from the testimony of Starko that Debtor has approximately six employees, two of whom are Starko and his wife.  Starko's testimony was that neither he nor his wife is a medical doctor or a registered nurse.

While Starko testified that there are medical doctors on call or who are occasionally in the clinic, and argues that this set of practices is within Texas law governing such clinics, this court need not reach a conclusion as to the safety of such practices.  As set forth below, the court will order dismissal of the above captioned case.  However, were the case to continue in Chapter 11, the court would find that there has been an insufficient showing that appointment of an ombudsman is not necessary for the protection of patients, and would direct the

United States Trustee to immediately appoint an ombudsman.

The instant case presents two questions of first impression in this court with respect to dismissal.  Section 1112(b)(1) of the Bankruptcy Code provides:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1).

Prior to the 2005 amendments to the Bankruptcy Code, Section 1112(b)(1) provided in pertinent part:

> Except as provided in subsection (c) of this section, on request of a party in interest or the United States Trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause...

11 U.S.C. § 1112(b)(1) (West 2005).

The first question of first impression in this court presented by the instant case is whether, after the 2005 amendments, the court may consider the dismissal of a Chapter 11 case sua sponte.  The only court to consider this issue concluded that the court may dismiss a case sua sponte, after the amendment to Section 1112(b).  In re Munteanu, 2007 WL 1987783 (E.D.N.Y.

2007).

Courts addressing the question of whether the court may dismiss a Chapter 11 case sua sponte prior to the 2005 amendments were split.  See In re A-1 Specialty Gasolines, Inc., 238 B.R. 876 (Bankr. S.D. Fla. 1999); Argus Group 1700, Inc. v. Steinman, 206 B.R. 757 (E.D. Pa. 1997); In re 183 Lorraine Street Associates, 198 B.R. 16 (E.D.N.Y. 1996); Pleasant Pointe Apartments, Ltd. v. Kentucky Housing Corp., 139 B.R. 828 (W.D. Ky. 1992); In re Daily Corp., 72 B.R. 489 (Bankr. E.D. Pa. 1987) (court has sua sponte authority).  See In re Moog, 774 F.2d 1073 (11th Cir. 1985) (court lacks sua sponte authority).  The Eleventh Circuit opinion in Moog predates the 1986 amendment to 11 U.S.C. § 105, which added the following language:

> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The court concludes that it may dismiss a Chapter 11 case sua sponte, after the amendment to Section 1112(b).

The second question of first impression in this court presented by the instant case is whether the court must address the motion to appoint trustee prior to consideration of its Order to Show Cause why not to dismiss.  The plain language of Section 1112(b)(1) provides that the court must consider whether

11

appointment of a Chapter 11 trustee would be in the best interests of creditors and the estate.  The court's obligation to consider this issue is independent of Gilliland's motion to appoint a trustee.

Prior to the 2005 amendments to the Bankruptcy Code, this court had generally applied a totality of the circumstances approach, citing <u>Matter of Atlas Supply Corp.</u>, 857 F.2d 1061 (5th Cir. 1988), and had generally found cause to dismiss cases in which it appeared that the debtor was attempting to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute.  <u>See</u> <u>e.g.</u>, <u>In re Kemper</u>, Case No. 04-82663-G3-7 (Slip Op. May 18, 2006); <u>In re Gamma Env. Services, Inc.</u>, Case No. 01-32689-H3-7 (Slip Op. July 18, 2001); <u>In re Leslie</u>, Case No. 98-35386-H3-11 (Slip Op. February 12, 1999).  <u>See</u> <u>also</u> <u>In re Mazzocone</u>, 200 B.R. 568 (E.D. Pa. 1996); <u>In re Ravick Corp.</u>, 106 B.R. 834 (Bankr. D.N.J. 1989); <u>Argus Group 1700, Inc. v. Steinman (In re Argus Group 1700, Inc.)</u>, 206 B.R. 757 (E.D. Pa. 1997).  The same rationale underlies a determination of cause for dismissal under Section 1112(b) following the 2005 amendments.  After the 2005 amendments, the court continues to consider cause for dismissal of a Chapter 11 case based on the totality of the circumstances in the case.  It remains the case that a debtor's attempt to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute strongly

12

supports a finding of cause for dismissal.

In the instant case, the amounts in controversy in the state court case vastly exceed the size of the assets and gross income of the bankruptcy estate. Moreover, the state court lawsuit addresses questions of control of the debtor entity itself, between an entity apparently controlled by Starko, and Gilliland, who Starko alleges is presently incarcerated. There was no evidentiary showing supporting a need for financial reorganization of this Debtor. There are only three creditors scheduled, other than participants in the state court case. As stated above, if the instant case were to proceed in Chapter 11, it would necessarily occasion the expense of hiring a patient care ombudsman. The court concludes that there is cause for dismissal of the instant case.

With respect to the question of whether to appoint a Chapter 11 trustee, the party seeking appointment of a Chapter 11 trustee is a party to the state court litigation, and it is not clear whether its motivations are likewise to gain unfair advantage in the state court proceeding by removing Starko from control of Debtor's business. The existence of the pending state court proceeding, the amounts in controversy in that proceeding compared to the size of the estate in the instant case, and the administrative expenses that would be incurred for both a Chapter 11 trustee and a patient care ombudsman lead the court to conclude that the best interests of creditors and the estate are

served by dismissal rather than appointment of a Chapter 11 trustee.[2]

Based on the foregoing, a separate Judgment will be entered dismissing the above captioned Chapter 11 case.

Signed at Houston, Texas on April 4, 2008.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE

---

[2] The court makes the instant determination pursuant to 11 U.S.C. § 1104(a)(3). The court does not reach the issues raised by Gilliland under the other subsections of Section 1104.